S. OVERMOE, Respondent, v. J. C. PENNEY COMPANY, a Foreign Corporation, Appellant.

(202 N. W. 648.)

**Torts — evidence held insufficient to sustain verdict for injury by altering check.**

1. Evidence examined and *held* insufficient to justify the verdict.

**No recovery for injury proximate result of plaintiff's own act.**

2. Plaintiff cannot recover for an alleged injury which is the proximate result of his own independent action.

(Opinion filed February 28, 1925.)

Torts, 38 Cyc. p. 452 n. 5; p. 539 n. 98.

Appeal from the District Court of Ward County, *Lowe,* J.

Defendant appeals from judgment in plaintiff's favor and from order denying motion for new trial.

Reversed and remanded.

*Francis Murphy,* for appellant.

*Halvor L. Halvorson,* for respondent.

BURKE, J.   The complaint in this action alleges that on or about the 25th day of July, 1922, the defendant, by and through its agents and officers, having in its possession a check dated December 24, 1920, signed by the plaintiff, in the sum of $39.90, payable to the defendant, and drawn upon the First Farmers Bank of Minot, and then and there knowing that said check had been paid by the plaintiff in full to the defendant, the said defendant altered said check by erasing the name of the said First Farmers Bank of Minot and inserting in said check the name of Second National Bank, and that said defendant presented same to the said Second National Bank at Minot and cashed the same and had the same charged against the account of plaintiff, and the plaintiff, by reason thereof, had several checks refused by said Second National Bank, on the ground that there were not sufficient funds to meet such checks, and by the depletion of his account the plaintiff was injured in his reputation, his credit questioned, and his standing lowered in the estimation of friends and business associates, causing the plaintiff grievous mental suffering and injury.   The defendant answered by a general denial except admitting that defendant is a corporation.

The case was submitted to the jury upon instructions authorizing special findings and a general verdict.   The jury found and assessed the actual damage at $650.00, exemplary damages at $250.00, and returned a general verdict for the sum of $900.00.   A motion was made by defendant's counsel for judgment notwithstanding the verdict and also a motion for a new trial, both of which were overruled.   The defendant has appealed to this court, alleging twenty-five different errors, only a few of which are urged in the defendant's brief on appeal. First, is the insufficiency of the evidence to justify the verdict.

The plaintiff, in his direct testimony, states in substance as follows: On the 24th day of December, 1920, I bought a suit of clothes from

the defendant for the sum of $39.90. I had at that time an account in the First Farmers Bank of Minot. I had no blank checks with me on that bank, and the defendant, having a blank check book on the Scandinavian American Bank, I erased the name of the Scandinavian American Bank and wrote in the First Farmers Bank, and then filled out a check for $39.90, and delivered same to the defendant. On the evening of the same day, Mr. Clapp, who was then manager of the Penney store in Minot, called me on the telephone and said that the First Farmers Bank had failed and that the check was no good. I said to him that I would make the check good and he said that it was not necessary as the amount that I owed the store could be deducted from the amount the store owed me for decorating. Sometime in January, I went into the store to settle with Mr. Clapp, and the $39.90 was taken out of the amount that the store owed me for decorating and the balance was paid to me by check. Sometime in July, this check for $39.90 showed up charged against my account in the Second National Bank. I went to see Mr. Bartholomew, and asked him how it could be that check came over at this time. He asked me if I owed the money and I explained to him just how the matter was. I told him the transaction with Mr. Clapp and how it was taken out of my contract for the work I done there. I asked him how this check come to come through the Second National Bank, and he told me at the time that he changed it from the First Farmers Bank to the Second National Bank. He figured that the check should be paid. I did state to him that it was irregular and he said he had done that often. I then went to the Second National Bank and I talked to Mr. Dahl, who was one of the employees of the bank. The check was charged to my account in the bank. This check, Exhibit 1, came back to me with the vouchers from the Second National Bank, and was charged against my account in the bank. I have had the check, Exhibit 1, in my possession, or in the possession of any attorney, ever since it was returned with the vouchers. Mr. Bartholomew told me he had cashed the check at the Second National Bank and it was then I went to the bank and had a talk with them. I talked with Mr. Tooley at that time, an officer and employee. After the 25th of July, after this check had been cleared, I went to Mr. Bartholomew, the manager of the Penney store, and had a talk with him, the second time, and asked him what he was going to

do about the check, and he told me he was not going to do anything about it; they had their money and that was all; that is about all the conversation we had at that time. The cashing of the check against my account caused other checks that I had given to be refused by that bank. I recollect some of the checks that were refused by the bank at the time this check was charged against my account; one check was payable to St. Joseph's Hospital,—that was refused; one check given to Dr. Ransom,—that was refused; one check given to the Economy Department Store,—that was refused. The cashing of this check against my account at the Second National Bank caused other checks to be refused by the bank.

On cross examination, the plaintiff testifies: I gave the check to St. Joseph's Hospital on the 19th of August,—it was for $40.00; I gave a check the same day to Dr. Ransom for $10.00, and about three or four days later, August 22nd or 23rd, 1922, I gave a check for $6.00 to the Economy Department Store. I go to the bank the last of the month and find the balance; get back checks and statements; that has been my practice for a number of years to get the statement at the last of the month; unless I have been drawn up, I sometimes ask for my balance at other times. I presume I got my bank balance from the Second National Bank on August 1, 1922. When I do, I check them over.

Q. Then you knew on August 1, 1922, before you had given these checks to the St. Joseph's Hospital, Dr. Ransom, and the Economy Store, that this check had been cashed by the Penney Company, did you not?

A. I did not know until I got my statement from the bank.

Q. Did you get your statement the 1st of August?

A. I got my balance some time in the latter part.

Q. When?

A. I called for my balance at the time these checks were turned down and I got it again of course the 1st of August.

Q. Balance for what?

A. In the bank.

Q. When was the last time you got it before that?

A. I presume the last of the month previous.

Q. What month?

A. In July.

Q. End of July?

A. Yes, sir.

Q. You think you got your bank statement in the end of July?

A. I think so.

Q. Was this check in that balance? (Referring to Exhibit 1, a check for $39.90.)

A. Exhibit 1 was.

Q. Exhibit 1, was that in the balance that you got at the end of July?

A. Yes sir, I think it was.

Q. Then you knew it had been cashed at the end of July?

A. I knew it had been cashed when I got my statement again the first of the month.

Q. First of the month?

A. On the 1st of August.

Q. Yes, you knew it when you got the statement, you knew it was cashed, didn't you?

A. Yes.

Q. When that check was returned to you, you knew it had been cashed then?

A. Surely.

Q. Were you greatly worried and concerned over these checks being turned down by the bank?

A. Yes, I was. It was a time of the year when in our line of work we did not have much work and I was in great need of whatever I had at that time.

Q. And it did greatly inconvenience you?

A. Yes, it did.

Q. And happened during the time when you needed the funds for doctor bills and hospital bills?

A. Yes sir.

Q. You have always paid your bills?

A. Yes sir.

Q. You have always enjoyed a reasonable amount of credit with the business men and merchants?

A. Yes sir.

This is practically all of the plaintiff's testimony upon the subject. Mr. Bartholomew was called for cross examination, under the statute, and stated that he became manager of defendant's store at Minot, in January, 1922. That when he came to the store there was some twenty-five checks that were carried in the cash. Among them was one for $39.90 signed by the plaintiff, Mr. Overmoe. He denies specifically that he told the plaintiff that he changed the check from the Farmers State Bank to the Second National Bank; denies that he had the check at all; and states that the check was handled by a Miss Dougherty, who was the cashier; that he had no feeling whatever against the plaintiff, and that when the plaintiff came to him after the 25th of July, the day upon which said check was charged to the account of the plaintiff, he told the plaintiff that if he would bring the check in, he would give him the money, and hold the check until such time as he could show that the check had been paid; that there were no records in the store showing any credit to the plaintiff for the sum of $39.90, or any sum. He testifies that in all of the conversations that he had with Mr. Overmoe, after the 25th of July, he stated to him that if he would return the check he would give him the money until such time as Mr. Overmoe was able to show the debt had been paid. Mr. Bartholomew's testimony is corroborated by the testimony of Mr. Elmer E. McNeil, a clerk in the store, who testifies that on one occasion he was present when there was a conversation between Mr. Overmoe and Mr. Bartholomew and Mr. Bartholomew said to Mr. Overmoe that he did not want to have it said he would stand in anyone's way; that he would redeem the check provided he would return the check to the store. He is also corroborated by the testimony of Mr. Ray O. Miller, who testifies that Mr. Overmoe had placed the check, plaintiff's Exhibit 1, in his hands for collection, and that he wrote a letter to Mr. Bartholomew, Manager of said store, and that in answer thereto, a young lady from the J. C. Penney store called at his office and left with him a check for the sum of $39.90. On being asked what was done with the check, he states: "as I recollect, that check was returned to the J. C. Penney Company by me." No reason is given why the check was returned, and there is no dispute but what a check for that amount was sent to Mr. Miller by the Penney store. Mr. Bartholomew says on cross examination, that in all of the conversations with Mr.

Overmoe, he told him that he would pay him the money if he brought him the check, which the defendant desired to hold until such time as Mr. Overmoe could show that it was paid. He explained, "our records must show either one, bought or cash." In other words, if he paid out $39.90, without this check to show what it was for, his books would be out of balance $39.90.

The plaintiff as a part of the cross examination of Ray Miller, offered in evidence a copy of a letter written by Mr. Miller to Mr. Bartholomew, which was admitted without objection, and which shows that the letter was written on the 8th day of August, 1922; so that it appears quite clear that all of the conversations between Mr. Overmoe and Mr. Bartholomew, and Mr. Overmoe and the officers of the Second National Bank, were between the 25th of July, 1922, and the 8th day of August, 1922, for, on the 8th day of August, 1922, the matter was in the hands of Mr. Overmoe's attorney.

The complaint alleges that Exhibit 1 was cashed and charged to the account of the plaintiff on the 25th day of July, 1922. Exhibit 1 shows on its face, that it was cashed at that time. The plaintiff's testimony shows that he got his statement from the bank the last of July, or the 1st of August, and that Exhibit 1 accompanied the statement.

It appears very clearly from the plaintiff's testimony that this check, the cashing of which depleted his bank account, and which he claims caused other checks to be protested, was in his possession from the last of July or in the possession of his attorney, all of the time up to the trial of the action. He had it in his possession when he had the three conversations with Bartholomew. He delivered it to his attorney sometime before the 8th day of August, 1922, as shown by the date of his attorney's letter. He had it in his possession when he talked with Mr. Dahl at the bank; he knew when he got his returns from the bank on the 1st of August, that his account was exhausted in the bank; he knew that he had no money in the bank to pay the checks which he issued on the 19th of August, thereafter, one for $40.00 to the hospital; one for $10.00 to the doctor; and one for $6.00 to the Economy Department Store, on the 22nd day of August, 1922, amounting in all to $56.00, and if the $39.90 check had never been cashed, or charged to the plaintiff's account, it would not pay the three checks

amounting to $56.00. Plaintiff further states that "it was at the time of the year when in our line of work we did not have much work, and I was in great need of whatever I had at that time," and the drawing of the checks was his own independent action, in drawing same on the bank, when he knew he had no money in the bank, that caused the checks to be protested. That was the proximate cause of the protesting of said checks.

Section 7165, Comp. Laws, 1913, reads as follows:

"For the breach of an obligation not arising from contract the measure of damages, except when otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."

This section restricts a recovery in such cases to damages proximately caused by such trespass. Peterson v. Conlan, 18 N. D. 205, 119 N. W. 367; Johnson v. Northern P. R. Co. 1 N. D. 354, 48 N. W. 227; Cooley, Torts, 99. Again the plaintiff cannot be permitted to recover by taking advantage of his own wrongs.

It is well settled law that if the act of the plaintiff causes the injury complained of or contributed to the injury, the plaintiff cannot recover. In the case of Newcomb v. Boston Protective Dept. 146 Mass. 596, 4 Am. St. Rep. 354, 16 N. E. 555, the court said:

"No case has been brought to our attention, and upon careful investigation we have found none, in which a plaintiff whose violation of law contributed directly and proximately to cause him an injury has been permitted to recover for it. . . . Hall v. Ripley, 119 Mass. 135; Banks v. Highland Street R. Co. 136 Mass. 485; Tuttle v. Lawrence, 119 Mass. 276, 278; Lyons v. Desotelle, 124 Mass. 387. . . .

"And it is quite immaterial whether or not a plaintiff's unlawful act contributing to his injury is negligent or wrong when considered in all its relations. He is precluded from recovering on the ground that the Court will not lend its aid to one whose violation of law is the foundation of his claim."

The test in every case is, did the act of the plaintiff cause the injury or did it contribute to the injury. From the evidence in this case the drawing of the checks by plaintiff, when he knew he had no

money in the bank, was the sole cause of the checks being protested, and, therefore, he cannot recover.

Reversed and remanded for a new trial.

CHRISTIANSON, Ch. J., and BIRDZELL, NUESSLE, and JOHNSON, JJ., concur.